FILED

1  Thomas J. Gearing, Esq. (SBN 121473)
2  9000 South Las Vegas Blvd., Ste. 2060
   Las Vegas, NV 89123
3  Tel: (702) 837-0766

   11 MAY 23 PM 2: 29

   CLERK U.S. DISTRICT COURT
   CENTRAL DIST. OF CALIF.

4  Attorneys for MICHAEL GEARING as Trustee of the Thomas J. Gearing Private
5  Annuity Trust, and ROSEMARY GEARING as Trustee of the T.J.G. Private
   Annuity Trust and In Propria Persona        BY:_____

6

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9

10  MICHAEL GEARING as Trustee of       ) Case No: **CV11  04417 ODW**  (MANX)
    the Thomas J. Gearing Private Annuity )
11  Trust, and ROSEMARY GEARING as      )
12  Trustee of the T.J.G. Private Annuity ) COMPLAINT FOR:
    Trust, and THOMAS J. GEARING,       )
13  individually,                       )   1. VIOLATIONS OF THE
                                        )      FEDERAL SECURITIES LAWS
14              Plaintiffs,             )   2. FRAUD
                                        )   3. MISREPRESENTATION
15       vs.                           )   4. NEGLIGENCE
                                        )
16  CHINA AGRITECH, INC., YU            )
17  CHANG, YAU-SING TANG, GENE          )
    MICHAEL, and DOES 1-10              )
18                                      )
                                        )
19              Defendants.             )

20

21

22        Plaintiffs Thomas J. Gearing, individually, Michael Gearing as Trustee of

23  the Thomas J. Gearing Private Annuity Trust, and Rosemary Gearing as Trustee of

24  the T.J.G. Private Annuity Trust (collectively "Plaintiff", "Plaintiffs" or "Gearing")

25  allege the following upon information and belief, except as to those allegations

26  concerning Plaintiff, which are alleged upon personal knowledge. Plaintiffs'

27  information and belief is based upon, among other things, his investigation, which

28  includes without limitation: (a) review and analysis of regulatory filings made by

                              1
                          COMPLAINT

China Agritech, Inc. ("Agritech" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Agritech; and (c) review of other publicly available information concerning Agritech and Individual Defendants.

## JURISDICTION AND VENUE

1.      This is an action for securities fraud arising under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

3.      Venue is proper in this Judicial District pursuant to §28 U.S.C. §1391(b) and §27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.

4.      In connection with the acts, transactions, and conduct alleged herein, defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

5.      Plaintiff Thomas J. Gearing, an individual, purchased Agritech securities between February 8, 2010 and February 3, 2011 at artificially inflated prices and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

6.      Plaintiff Michael Gearing, as Trustee of the Thomas J. Gearing Private Annuity Trust, purchased Agritech securities between February 8, 2010 and February 3, 2011 at artificially inflated prices and suffered damages as a result

1   of the federal securities law violations and false and/or misleading statements
2   and/or material omissions alleged herein.

3         7.    Plaintiff Rosemary Gearing, as Trustee of the T.J.G. Private Annuity
4   Trust, purchased Agritech securities between February 8, 2010 and February 3,
5   2011 at artificially inflated prices and suffered damages as a result of the federal
6   securities law violations and false and/or misleading statements and/or material
7   omissions alleged herein.

8         8.    Defendant Agritech is a Delaware corporation with its principle
9   executive offices located at Room 3F, No. 11 Building, Zhonghong International
10   Business Garden, Future Business Center, Chaoyang North Road, Chaoyang
11   District, Beijing, China 100024.  An Agritech subsidiary maintains an office in
12   California.  Agritech, through its subsidiaries, purports to manufacture and sell
13   organic and liquid fertilizers, organic compound fertilizers and related agricultural
14   products in China.

15         9.    At all relevant times, the Company's stock was actively traded on the
16   NASDAQ under ticker "CAGC."

17        10.    Defendant Yu Chang ("Chang") was, at all relevant times, President
18   and Chief Executive Officer ("CEO") of Agritech.

19        11.    Defendant Yau-Sing Tang ("Tang") was, at all relevant times, Chief
20   Financial Officer ("CFO") and Controller of Agritech.

21        12.    Defendant Gene Michael Bennett ("Bennett") was, at all relevant
22   times herein, a Director of Agritech, and the Chairman of the Audit Committee.

23        13.    Defendants Chang, Tang, and Bennett are collectively referred to
24   hereinafter as the "Individual Defendants."  The Individual Defendants, because of
25   their positions with the Company, possessed the power and authority to control the
26   contents of Agritech's reports to the SEC, press releases and presentations to
27   securities analysts, money and portfolio managers and institutional investors, *i.e.*,
28   the market. Each defendant was provided with copies of the Company's reports and

1  press releases alleged herein to be misleading prior to, or shortly after, their
2  issuance and had the ability and opportunity to prevent their issuance or cause
3  them to be corrected.  Because of their positions and access to material non-public
4  information available to them, each of these defendants knew that the adverse facts
5  specified herein had not been disclosed to, and were being concealed from, the
6  public, and that the positive representations which were being made were then
7  materially false and/or misleading.  The Individual Defendants are liable for the
8  false statements pleaded herein, as those statements were each "group-published"
9  information, the result of the collective actions of the Individual Defendants.

10  ## SUBSTANTIVE ALLEGATIONS

11      14.    China Agritech, through its subsidiaries, manufactures and sells
12  organic liquid compound fertilizers, organic granular compound fertilizers, and
13  related agricultural products in the People's Republic of China.

14      15.    On or about February 8, 2010, the Company issued a press release
15  announcing that its preliminary unaudited results exceeded 2009 guidance, stating
16  in relevant part:

17      For the year ended December 31, 2009, preliminary unaudited annual
18      revenues rose by 66% to approximately $75.0 million compared with
19      audited revenues of $45.2 million in 2008.  Preliminary annual
    revenues exceeded the Company's higher revised guidance of $70
20      million for the 2009 year.

21      Preliminary 2009 unaudited annual net income attributable to
22      common shareholders (excluding non-cash charge as a result of
23      issuance of warrants to Carlyle Group) increased by 82% to
    approximately $15.7 million compared with audited net income of
24      $8.6 million in 2008. This is in line with the Company's higher
25      revised guidance for net income of $15.6 million for the 2009 year.

26      Net revenues and net income for the 2009 year benefited from
27      increased organic liquid fertilizer sales combined with the successful
28      introduction of the Company's new organic granular fertilizer

4

products. During 2009, China Agritech completed three organic granular fertilizer plants with a total production capacity of 200,000 total metric tons and started commercial production in the Anhui and Harbin facilities. The Xinjiang facility will commence its commercial production in the second quarter of 2010. The Company's production plants are located in diverse locations to better serve the needs of the local farming communities.

16.     In the announcement, Mr. Yu Chang, Chairman and Chief Executive Officer of China Agritech, commented, "2010 is an important year for agriculture from both global and Chinese domestic perspectives. As governments around the world continue to encourage economic recovery, they are also increasingly calling for higher yields in farm production to stabilize food supplies and curb inflation. As a leader in the organic fertilizer space in China, we are well positioned to benefit from this favorable macro trend. As our newly introduced granular products continue to gain market share and build traction among Chinese farmers, we are confident that our granular fertilizer penetration is scalable and sustainable. With the increased sales of granular products, we also expect a healthy improvement in DSO in 2010."

17.     The Company also announced its guidance for the year ending December 31, 2010 with revenues expected to reach approximately $114 million based on current production and expectations.

18.     On April 1, 2010, China Agritech filed its Annual Report on Form 10-K with the SEC for the 2009 fiscal year. The Company's Form 10-K was signed by Defendant Chang and reaffirmed the Company's financial results previously announced on February 8, 2010. The Company's Form 10-K also contained Sarbanes-Oxley required certifications, signed by Defendants Chang and Tang, who certified:

1. I have reviewed this annual report on Form 10-K of China Agritech, Inc.;

2. Based on my knowledge, this annual report does not containany untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report; and

3. Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report; and

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e) for the registrant and have:

a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b) designed such internal control over financial reporting, caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the

case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

a) All significant deficiencies and material weaknesses in  the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information;and

b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

19.    On May 10, 2010, the Company announced its unaudited financial results for the first quarter ended March 31, 2010.  The announcement stated in relevant part:

Financial Highlights

- Net revenue increased 109% year-over-year to $15.3 million;
- Gross profit increased 90% year-over-year to $6.4 million on a 41.6% gross margin;
- Excluding non-cash charges reflecting the change in fair value of warrants issued and stock compensation of $9.6 million, non-GAAP net income increased 210% year-overyear to $3.3 million;
- Non-GAAP fully diluted EPS $0.18, up 100% from $0.09 in 2009, on a higher weighted average number of shares outstanding;
- GAAP net loss was $6.4 million, or $0.37 loss per diluted share;
- Cash and cash equivalents were $28.7 million;

- Net cash flow from operation was $8.3 million for the first quarter.

\* \* \*

Net revenue for the first quarter of 2010 grew by 109% to $15.3 million from sales in the first quarter of 2009 of $7.3 million. Revenues in the first quarter of 2010 were approximately derived equally from organic liquid and organic granular sales. Liquid sales of $8.1 million were 11% higher than the same quarter last year primarily due to new markets established in the southern and central parts of the country. Sales of our new granular products were $7.2million in 2010 whereas there were no granular sales in the first quarter of 2009.

Gross profit increased 90% year-over-year to approximately $6.4 million. Gross margin for the quarter was 42%, down from 46 in the first quarter of 2009. The lower gross margin was primarily due to the change in the product mix as the Company introduced granular organic compound fertilizer in the second half of 2009. Granular organic fertilizer carries a lower margin than liquid organic fertilizer, but presents a substantially larger market. Organic granular fertilizer and organic liquid fertilizer products recorded 29% and 53% gross profit margin, respectively, in the first quarter of 2010.

20.     Mr. Yu Chang, Chief Executive Officer of China Agritech, commented, "We are excited to report another strong quarter. First quarter is typically the slow season. However, our liquid and granular fertilizer sales remained strong. As severe climate changes and natural disasters continue to unfold in many parts of the agricultural provinces in China, agricultural product supplies becomes increasingly important in balancing demand for an already undersupplied population. With the increasing acceptance of organic fertilizers among Chinese farmers, we are confident that our liquid and granular organic fertilizer bundle will continue to help farmers increase their yields."

21.     On May 10, 2010, China Agritech filed its Quarterly Report on Form 10-Q with the SEC for the 2010 fiscal first quarter. The Company's Form 10-Q was

1  signed and certified by Defendants Chang and Tang, and reaffirmed the Company's

2  financial results announced that day.

3     22.   On August 12, 2010, the Company reported record quarterly net

4  revenue and gross profit for the second quarter of 2010, which stated in relevant

5  part:

Second Quarter Financial Highlights
- Net revenue increased 63% year-over-year to a quarterly record of $34.3 million;
- Gross profit increased 33% year-over-year to $11.9 million with a 34.7% gross margin;
- Net income was $21 million, or Diluted EPS $1.05;
- Cash and cash equivalents were $51.7 million with no debt.

Second Quarter 2010 Results

Net revenue grew 63% year-over-year to a quarterly record of $34.3million from $21.0 million in the second quarter last year. Liquid fertilizer sales increased year-over-year by 46% to approximately $20.0 million, while granular fertilizer sales posted a year-over-year 95% increase to reach approximately $14.3 million. Organic granular fertilizer continued to gain traction among farmers during the quarter, while the sales of organic liquid fertilizer is expected to further accelerate during the growing season starting from May. The increase of organic liquid fertilizer sales also reflected the expansion of the Company's customer base to newly established markets in the central and southern regions of China.

Gross profit increased 33% year-over-year to a quarterly record of $11.9 million from $9.0 million for the same quarter last year. Blended gross margin for the second quarter was 34.7% compared with 42.7% for the same period in 2009. The decrease was primarily due to the ongoing shift in the product mix as the Company increases its share of the comparatively lower-margined organic granular products. Specifically, organic granular fertilizer recorded a gross profit margin of 20.3%, in line with the same period of 2009. Organic liquid fertilizer products had a gross profit margin of 45.1% compared with 53.2% for the same period in 2009. The decrease in gross margin for the organic liquid fertilizer was due to the changed composition of

organic liquid fertilizer products, in which more raw materials lowered the profit margin.

Selling expenses were $1.3 million, or 3.8% of revenue, compared with $0.6 million, or 3.0% in the second quarter of 2009. The increase in both absolute value and as percentage of revenue in selling expenses was mainly due to increased promotion expenses and handling charges proportional to the increase in sales.

General and administrative expenses were $3.8 million, or 8.9% of revenue, compared with $0.9 million, or 4.2% of revenue, for the same period in 2009. The increase in administrative expenses was mainly due to increased research and development costs and sharebased compensation. During the second quarter of 2010, the sharebased compensation was $1.4 million as compared with $2,700 in the same period of 2009.

Income from operations was $7.5 million, in line with the same quarter of 2009.

Excluding the non-deductible charge for the change in fair value of warrants of $13.3 million and gain on extinguishment of warrants classified as derivatives of $1.6 million, our effective tax rate for the second quarter of 2010 would have been 18.9%, as compared to 21.5% for the same period in 2009. The decrease in effective tax rate was due to one of the operating subsidiary in China that generated net operating profit for the quarter still enjoying the tax rate reduction and subject to the income tax rate of 12.5%.

GAAP net income for the second quarter of 2010 was $21.0 million compared with $5.6 million in the same period of 2009. Diluted earnings per share of $1.05 on a substantially greater number of shares outstanding, compared with diluted earnings per share of $0.44 in the previous year's same quarter.

Excluding the non-cash gain in the fair value of warrants, gain on extinguishment of warrants, and share-based compensation, non-GAAP net income attributable to common stockholders for the second quarter of 2010 was $7.3 million, up 30.4% from $5.6 million in the same period last year. Non-GAAP diluted earnings per share were $0.37 versus $0.44 for the same quarter in 2009, but on substantially

greater number of shares outstanding in the 2010 period. Diluted weighted average number of shares outstanding for the second quarter of 2010 was 19.7 million compared with 12.7 million shares in the second quarter of 2009.

23.    Mr. Yu Chang, Chief Executive Officer of China Agritech, commented, "We are very pleased with our second quarter performance as our granular products sales are experiencing accelerating growth.  We are not only increasing our customer base and broadening geographic penetration, but also receiving more inquiries from farmers and distributors on the functionalities of our product, as more and more agricultural regions are affected by climate change and deteriorating soil conditions.  As China is facing challenges of both food safety and food shortage, the organic food market is becoming an important sector due to its sustainable volume growth and high-quality nutritional standard.  More farmers are willing to grow organic grains, fruits and vegetables because the end market is paying higher prices for quality products.  We will continue to increase our R&D investment and roll out more products to meet the growing demand in China. Our goals of extending our market leadership and maximizing our long-term shareholders' value remain unchanged."

24.    Mr. Chang continued, "Compared with liquid organic fertilizer, granular organic fertilizer has only emerged in the recent few years. However, due to its efficacy in plant growth, nutrient preservation, ease for transportation and favorable pricing, granular organic fertilizer has been well received by farmers. Moreover, the growing adoption of granular fertilizer also boosts the demand of liquid organic fertilizer as their different functions for different stages of farming. After over 2 years' preparation of technology upgrades and production facility constructions, we now the largest commercial producer of granular organic fertilizer with a number of mature products and well established production capacity, and we are moving full speed on market share acquisition."

25.     On August 16, 2010, China Agritech filed its Quarterly Report on Form 10-Q with the SEC for the 2010 fiscal second quarter. The Company's Form 10-Q was signed and certified by Defendants Chang and Tang, and reaffirmed the Company's financial results previously announced on August 12, 2010.

26.     On November 10, 2010, the Company reported its 2010 third quarter and nine month financial results, stating in relevant part:

Third Quarter Financial and Operating Highlights

Net income was $1.8 million, or diluted EPS $0.09;

Excluding the allowance for doubtful debts and stock-based compensation, adjusted net income was $4.6 million, or diluted EPS $0.22;

Cash and cash equivalents were $45.8 million with no debt;

Entered into a strategic agreement with the Beijing Municipal Government to establish within Beijing the headquarters of its nationwide network of distribution centers.

Nine-Month Financial Highlights

Net revenue increased 41% year-over-year to $78.1 million;

Gross profit increased 24.8% year-over-year to $27.4 million;

Net income was $13.6 million, or $0.69 earning per diluted share;

Excluding the change in fair value of warrants, allowance for doubtful debts and share-based compensation, adjusted net income was $15.2 million, or diluted EPS $0.77.

***

Third Quarter 2010 Results

Net revenue for the third quarter of 2010 was $23.9 million compared with $27.0 million in the same quarter last year. Sales of the Company's organic liquid fertilizer were $14.2 million, while organic granular fertilizer sales registered $9.7 million during the quarter. The decline in the sales of organic granular fertilizers was mainly due to

normalizing the credit sale policy. As the organic granular fertilizers move beyond its introductory stage, an increasingly larger proportion of the granular products sales are now cash based and it is expected to remain so going forward. Decreased sales of organic granular fertilizer were also due to seasonality as such products are usually applied by farmers prior to the seeding season. Unusually high temperature and precipitation hampered the production, storage, transportation of organic fertilizers, decreasing order sizes from some commercial users. In addition, severe weather in the central and southern parts of the country, such as Hubei ,Anhui and Guangxi provinces, also negatively impacted overall fertilizer sales, and in particular that of the organic granular fertilizers.

Gross profit for the third quarter of 2010 was $9.0 million, compared with $9.6 million during the same quarter in 2009. Gross margin for the quarter increased to 37.6% from 35.5% for the same period in 2009. The increase in the gross margin was because a greater proportion of the overall quarterly sales derived from the higher-margined organic liquid fertilizers. In addition, enhanced production efficiency contributed to higher gross margin in organic granular fertilizers of 22% compared with 20% for the same period in 2009. Organic liquid fertilizer had a gross profit margin of 48%, in line with the previous year.

General and administrative ("G&A") expenses for the third quarter of 2010 were $4.1 million, or 17.1% of revenue, compared with $1.7 million, or 6.3% of revenue, for the comparable period in 2009. The increase in G&A in both absolute value and as a percentage of revenue was primarily due to non-cash charges of $1.3 million for share-based compensation as well as the additional $1.5 million allowance for doubtful debts. For the same period in 2009, allowance for doubtful debts was $0.45 million.

Selling expenses for the third quarter of 2010 were $0.8 million compared with $0.7 million in the third quarter of 2009. The increase in selling expenses was due to the increase in promotion and advertisement expenses. Selling expenses as a percentage of net revenues were 3.4% of revenue, compared with 2.7% in the third quarter of 2009.

Income from operations for the third quarter of 2010 was $4.1 million, compared with $7.2 million for the same period in 2009. Excluding the provision for doubtful debts and share-based compensation, adjusted income from operations for the third quarter of 2010 was $6.9 million, compared with $7.6 million for the third quarter in 2009.

Income tax expense of $2.1 million, representing an effective tax rate of 53.4%, for the three-month period ended September 30, 2010, compared to 20.6% for the same period in 2009.

GAAP net income for the third quarter of 2010 was $1.8 million compared with $5.7 million in the same period of 2009. Diluted earnings per share of $0.09 on a substantially greater number of shares outstanding, compared with diluted earnings per share of $0.41 in the previous year's same quarter.

Excluding the provision for doubtful debt and share-based compensation, adjusted net income attributable to common stockholders for the third quarter of 2010 was $4.6 million, compared with $6.2 million in the third quarter of 2009. Non-GAAP diluted earnings per share were $0.22 versus $0.44 for the same period in 2009, but on a substantially greater number of shares outstanding in the 2010 period. Diluted weighted average number of shares outstanding for the third quarter of 2010 was 20.6 million compared with 14.1 million shares in the third quarter of 2009.

27.    Mr. Yu Chang, Chief Executive Officer and Chairman of China Agritech, commented, "During this summer, farmland in parts of China experienced possibly the most destructive floods since 1998. The Ministry of Water Resources estimated that financial damages reached tens of billions of dollars as farmland were destroyed along with infrastructures. Food supplies plummeted as the government estimated that 2 million acres of crops and farmland have been hit by the floods. As a result, our business was negatively affected, especially in southern provinces where a large portion of our granular fertilizer products were being sold. Our liquid fertilizer sales were also partially impacted in the Southern regions, however, sales growth in Northeast china remained intact."

28.     On November 10, 2010, China Agritech filed its Quarterly Report on Form 10-Q with the SEC for the 2010 fiscal third quarter. The Company's Form 10-Q was signed and certified by Defendants Chang and Tang, and reaffirmed the Company's financial results announced that day.

29.     On November 15, 2010, the Company reported that it had replaced its auditor Crowe Horwath LLP as the Company's independent auditor, triggering the stock to stumble nearly 5%.

30.     The statements contained in ¶¶15-28 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's manufacturing facilities in Bejing, Anhui, Xinjiang and Harbin, were idle or producing far less fertilizer than portrayed by the Company; (2) that the Company did not have the equipment to support its claimed production capacity; (3) that the Company did not receive a license to manufacture granular compound fertilizer; (4) that, as a result of the foregoing, the Company had misrepresented its fertilizer production levels and sales; (5) that the financial results and figures reported by the Company's subsidiaries in Chinese regulatory filings were less than the financial results the Company publicly reported and filed with the SEC; (6) that the Company lacked adequate internal and financial controls; and (7) that, as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## TRUTH COMES TO LIGHT

31.     On February 3, 2011, an analyst firm called LM Research issued a report entitled "China Agritech: A Scam." The report called into question financial accuracy of China Agritech's financial reporting, asserting in relevant part:

**Summary**

- China Agritech ("CAGC", "Agritech" or the "Company") is a $230 million company that purportedly manufactured and sold $119 million worth of "green" fertilizers throughout China in 2010. In reality, we

believe Agritech's factories are currently all idle and only one out of its four factories produced anything at all in 2010.

- Despite having raised over $70 million in capital since 2005, Agritech appears to have acquired only several million dollars worth of capital equipment. By contrast, it has paid its two founders at least $4 million in rental fees and real estate purchases during that time.

- We have been unable to obtain even one sample of Agritech product, even from headquarters, nor have we found a single distributor or sales outlet.

- Companies Agritech claims as clients, such as the big stateowned fertilizer company Sinochem, deny having any contracts with Agritech. Sinochem has told us that it does not sell any Agritech products.

- Government officials in China told us that Agritech does not have a license to manufacture granular fertilizers, which the company claims are its largest product line.

- We visited each Agritech facility and found each one empty, idle, and without production equipment.

- Agritech's CFO has been involved in two listed companies before Agritech in which he personally collected seven-figure sums while the companies went to zero. Analysts have called these earlier companies "pump and dump" schemes.

- In early 2010, the U.S. Financial Industry Regulatory Authority (FINRA) lodged a formal inquiry with CAGC questioning insider share transactions.

- Our calls and emails to the company requesting clarification have gone unanswered.

- All evidence suggests that this company has never been a successful vendor of fertilizer and is currently fraudulent.

\* \* \*

**China Agritech: A Company that barely exists**

On January 21st, China Agritech Inc. (listed on the NASDAQ under the ticker CAGC) reported 2010 annual revenues of $119 million: up 56% from 2009 and well ahead of the $107 million average estimate. The share price rose 5%. As far as we can determine, however, this revenue number was invented out of thin air.

***Factories are idle***: After visiting Agritech's reported manufacturing facilities in Beijing, Anhui, Xinjiang, and Harbin, we found virtually no manufacturing underway. The single exception was the facility in Pinggu County on the outskirts of Beijing, where the plant was not in operation on the Friday when we visited but local people told us that it has sporadically produced some liquid fertilizer over the last year. Plants in Bengbu, Anhui (supposedly the largest), Harbin, and Xinjiang were completely shuttered.

***Harbin plant for sale:*** The Harbin facility – supposedly a major manufacturing facility for the $100 million revenue business –whose name has never been officially changed in government documentation from "Pacific Dragon," had a sign hanging on the gates last summer reading "this factory is for sale." Although the company gives an adjacent address for its facility, which has a signboard reading "Harbin Agritech," the registration documents with the local Administration of Industry and Commerce (AIC) have not been updated (a serious regulatory violation in China).

***No contract with Sinochem:*** A January Agritech announcement states: "In May 2010, the Company signed a renewed contract supplying organic liquid compound fertilizers to Sinochem, China's largest fertilizer distributor. The sales contract is worth RMB 61 million (approximately $9 million) and the Company will also continue to supply Sinochem with organic granular compound fertilizer under another existing contract." But a manager with Sinochem told us that Sinochem has no contract with Agritech and in fact has never bought or sold organic liquid fertilizers.

* * *

***Fictional revenue:*** Through legal agents, we have received an analysis of audited CAGC revenues reported to the Chinese government for the year 2009 in every subsidiary we were able to trace—including the Beijing subsidiary, which is mysteriously unreported by the company. We were able to review CAGC's results

from its companies in Anhui, Beijing, Heilongjiang, and Xinjiang. The branch company in Chongqing, we were told by government sources, does not keep a separate P&L but instead records its revenue through its parent company. We did not find a record of a Xinjiang branch company.

Gross revenue, profit and fixed assets reported to the government in these companies for 2009 was as follows:

| Subsidiary Name | 2009 Gross Revenue (RMB) | Profit (Loss) (RMB) | Fixed Asset Value (RMB) |
|---|---|---|---|
| Harbin Pacific Dragon Liquid Compound Fertilizer Co. Ltd. | 580,000 | -7,000 | 1 million |
| Agritech Fertilizer Company (Beijing) | 46.65 million | 7.61 million | 10.95 million |
| Anhui Agritech Agricultural Development Co. Ltd. | 530,000 | -94,000 | 2.73 million |
| Xinjiang Agritech Agricultural Resources Co. Ltd. | 3.82 million | -250,000 | -20,000 |
| **Totals Reported to SAIC (in RMB)** | **51.58 million** | **7.259 million** | **14.7 million** |
| **Totals Reported to SAIC (in USD)** | **$7.58 million** | **$1.067 Million** | **$2.16 million** |
| **Numbers reported to the SEC** | **$76.13 million** | **$5.69 million** | **$5.98 million** |

| SEC figures as a multiple of SAIC | 10x higher | 5x higher | 3x higher |
| --- | --- | --- | --- |

In its Q3 2010 report, Agritech claims that it has 100,000 metric tons of production capacity in Anhui, 50,000 metric tons in Harbin, and 50,000 tons in Xinjiang. But a total value of US$3,000 in plant and equipment in Xinjiang would be insufficient to support 50,000 tons of production capacity. Indeed, when we visited the site of the Xinjiang plant, we found little more than a warehouse, shared with two other companies and demonstrating no activity.

Our early attempts to find the Xinjiang factory were unsuccessful; there is no Agritech building at the company's legally registered address, and neither local government officials nor other companies in the high-tech park on the outskirts of Urumqi that is officially the site of the plant had ever heard of China Agritech. Finally, after searching the area and asking county officials, we were able to discover a facility bearing Agritech's name along with the names of two other companies, including the instruments company from which Agritech reportedly rents its facility.

The facility, however, is idle, and we were told by local people that there is no production activity there.

In Anhui, which Agritech calls its principal production facility, $400,000 worth of plant and equipment would seem slim for 100,000 tons of production capacity. We visited and found a small plant on a rutted road outside Bengbu, completely deserted.

The Beijing plant is larger, but plant staff said in our presence that the facility was idle. The company would not allow us in, but we drove around the plant and saw a few people on site washing clothes but no evidence of production. Local government officials said that Agritech had not been able to obtain a production license for granular fertilizer and that it produced a very small volume of liquid fertilizer.

We can only conclude that China Agritech has no product. Insiders are taking wealth from their shareholdings, since clearly they cannot derive wealth from company profits: in January alone, co-founder

Teng Xiaorong took in about $260,000 from share sale proceeds, and in 2010 she sold over $1 million worth of stock in the company in addition to being issued new shares. Ms. Teng, who according to the company's 2010 annual proxy received $131,524 in direct cash compensation last year from CAGC, is a director of the company without an executive role.

In other words, as Agritech's actual revenue and profitability have dwindled to nothing, insiders have levered more money out of the company in shares sales. Added to that, insiders have reaped benefits from the sale and rental of real estate to Agritech.

***No distribution centers:*** In May 2010, Agritech issued over 1.4 million new shares, raising just under $19 million for the construction of distribution centers. But we have not been able to find evidence that any distribution centers were actually built.

***Mysterious suppliers:*** The companies that Agritech lists in its corporate materials as suppliers of raw materials, including Harbin Haiheng Chemical Distribution Co., Beijing Zhongxin Chemical Development Co., and Shenzhen Hongchou Technology Co., cannot be found in any directory under possible Chinese names that would correspond to the transliterated names or under the alphabetic names. No companies with names resembling these appear on industry lists of companies making humic acid or ingredients for "green" fertilizers. In fact, we speculate that the companies, if they ever existed, form an outdated supplier list, since at least three of Agritech's four factories are closed down.

For example, Agritech lists a supplier they call "Beijing Zhongxin Chemical Development Company." No such company exists, although there is one in Beijing called "Beijing Zhongxin Trading Company" listed on the Internet. However, when we called the Beijing operator for directory assistance, she could find no such company listed in the active directory. We gave her the phone number listed on the Internet site (010-66067374) and asked her to do a "reverse look-up" of the number. She advised us that this is a number for a public phone booth, not a legitimate business phone number. All other searches for the suppliers mentioned in the 10K filing were futile.

Agritech gives no information about customers or distributors in the two most recent 10Ks; we had to go back three years to find the names of any such companies. We decided to contact each of the companies mentioned in that three- year-old 10K. We could verify only one of the names - Sinochem, which had already told us they do not do business with Agritech. We were not able to find active businesses with active phone numbers for any of the other supposed Customers listed by Agritech.

\* \* \*

### Financial anomalies

We have done some analysis of financial reports that Agritech has provided to its SAIC regulators in China and have determined the following:

1. The Harbin company, Pacific Dragon, has cumulative losses since 1994 of over 4 million RMB. None of its 2009 revenue was actually received but all was entered into "accounts receivable." Meanwhile, the debt-to-asset ratio is 98% and quick ratio is 61%. There were no sales expenses at all, only administrative expenses. In short, the 2009 audit report on CAGC's Harbin company shows a dead company.

2. The Anhui facility has generated losses every year since its establishment in 2006. By the end of 2009, it had lost 3.89 million RMB. The company had zero cash on its books.

3. The Xinjiang company reports zero fixed assets, meaning that it owns no equipment for production. Moreover, its 75% parent is the Anhui company, yet the Anhui company never reported making the required investment in the Xinjiang subsidiary.

4. The Beijing facility has licensed registered capital of $20 million, but by the end of 2009 had received 88 million RMB, so only more than half of the legally required amount. But despite the missing capital, half of the registered capital was still sitting in the account in cash in 2009, indicating that the company had not purchased much, if any, equipment.

32.     Upon the disclosure of LM Research's Report, the Company's shares declined $0.93 per share, or 8.63%, to close on February 3, 2011, at $9.85 per share, on unusually heavy trading volume.

## UNDISCLOSED ADVERSE FACTS

33.     The market for China Agritech securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, China Agritech securities traded at artificially inflated prices during all relevant times. Plaintiff purchased or otherwise acquired China Agritech securities relying upon the integrity of the market price of the Company's securities and market information relating to China Agritech, and have been damaged thereby.

34.     During all relevant times, Defendants materially misled the investing public, thereby inflating the price of China Agritech securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about China Agritech's business, operations, and prospects as alleged herein.

35.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff.  As described herein, during all relevant times, Defendants made or caused to be made a series of materially false and/or misleading statements about China Agritech's financial performance and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.

1  Defendants' materially false and/or misleading statements during all relevant times
2  resulted in Plaintiff purchasing the Company's securities at artificially inflated
3  prices, thus causing the damages complained of herein.

4  ### LOSS CAUSATION

5  36.    Defendants' wrongful conduct, as alleged herein, directly and
6  proximately caused the economic loss suffered by Plaintiff.

7  37.    During all relevant times, Plaintiff purchased China Agritech
8  securities at artificially inflated prices and was damaged thereby. The price of the
9  Company's securities significantly declined when the misrepresentations made to
10  the market, and/or the information alleged herein to have been concealed from the
11  market, and/or the effects thereof, were revealed, causing investors' losses.

12  ### SCIENTER ALLEGATIONS

13  38.    As alleged herein, Defendants acted with scienter in that Defendants
14  knew that the public documents and statements issued or disseminated in the name
15  of the Company were materially false and/or misleading; knew that such
16  statements or documents would be issued or disseminated to the investing public;
17  and knowingly and substantially participated or acquiesced in the issuance or
18  dissemination of such statements or documents as primary violations of the federal
19  securities laws.

20  39.    As set forth elsewhere herein in detail, Defendants, by virtue of their
21  receipt of information reflecting the true facts regarding China Agritech, his/her
22  control over, and/or receipt and/or modification of China Agritech's allegedly
23  materially misleading misstatements and/or their associations with the Company
24  which made them privy to confidential proprietary information concerning China
25  Agritech, participated in the fraudulent scheme alleged herein.

26  40.    The ongoing fraudulent scheme described herein could not have been
27  perpetrated over a substantial period of time, as has occurred, without the

28

1  knowledge and complicity of the personnel at the highest level of the Company,
2  including the Individual Defendants.

3  **APPLICABILITY OF PRESUMPTION OF RELIANCE**
4  **(FRAUD-ON-THE-MARKET DOCTRINE)**

5      41.    The market for China Agritech securities was open, well-developed
6  and efficient at all relevant times. As a result of the materially false and/or
7  misleading statements and/or failures to disclose, China Agritech securities traded
8  at artificially inflated prices during the Class Period. On April 29, 2010, the
9  Company's stock closed at a high of $19.54 per share during all relevant times.
10 Plaintiff purchased or otherwise acquired the Company's securities relying upon
11 the integrity of the market price of China Agritech securities and market
12 information relating to China Agritech, and have been damaged thereby.

13     42.    During the relevant times, the artificial inflation of China Agritech
14 stock was caused by the material misrepresentations and/or omissions
15 particularized in this Complaint causing the damages sustained by Plaintiff. As
16 described herein, during all relevant times, Defendants made or caused to be made
17 a series of materially false and/or misleading statements about China Agritech's
18 financial performance and prospects. These material misstatements and/or
19 omissions created an unrealistically positive assessment of China Agritech and its
20 business, operations, and financial performance, thus causing the price of the
21 Company's securities to be artificially inflated at all relevant times, and when
22 disclosed, negatively affected the value of the Company stock. Defendants'
23 materially false and/or misleading statements during the Class Period resulted in
24 Plaintiff and other members of the Class purchasing the Company's securities at
25 such artificially inflated prices, and each of them has been damaged as a result.

26     43.    At all relevant times, the market for China Agritech securities was an
27 efficient market for the following reasons, among others:

28     (a) China Agritech stock met the requirements for listing, and was listed and
   actively traded on the NASDAQ, a highly efficient and automated market;

1     (b) As a regulated issuer, China Agritech filed periodic public reports with

2 the SEC and the NASDAQ;

3     (c) China Agritech regularly communicated with public investors via

4 established market communication mechanisms, including through regular

5 dissemination of press releases on the national circuits of major newswire services

6 and through other wide-ranging public disclosures, such as communications with

7 the financial press and other similar reporting services; and

8     (d) China Agritech was followed by securities analysts employed by major

9 brokerage firms who wrote reports about the Company, and these reports were

10 distributed to the sales force and certain customers of their respective brokerage

11 firms. Each of these reports was publicly available and entered the public

12 marketplace.

13     44.    As a result of the foregoing, the market for China Agritech securities

14 promptly digested current information regarding China Agritech from all publicly

15 available sources and reflected such information in China Agritech's stock price.

16 Under these circumstances, all purchasers of China Agritech securities during the

17 relevant times suffered similar injury through their purchase of China Agritech

18 securities at artificially inflated prices and a presumption of reliance applies.

19                         **NO SAFE HARBOR**

20     45.    The statutory safe harbor provided for forward-looking statements

21 under certain circumstances does not apply to any of the allegedly false statements

22 pleaded in this Complaint. The statements alleged to be false and misleading herein

23 all relate to then-existing facts and conditions. In addition, to the extent certain of

24 the statements alleged to be false may be characterized as forward looking, they

25 were not identified as "forward-looking statements" when made and there were no

26 meaningful cautionary statements identifying important factors that could cause

27 actual results to differ materially from those in the purportedly forward-looking

28 statements. In the alternative, to the extent that the statutory safe harbor is

1    determined to apply to any forward-looking statements pleaded herein, Defendants

2    are liable for those false forward-looking statements because at the time each of

3    those forward-looking statements was made, the speaker had actual knowledge that

4    the forward-looking statement was materially false or misleading, and/or the

5    forward-looking statement was authorized or approved by an executive officer of

6    China Agritech who knew that the statement was false when made.

### FIRST CLAIM

## Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

10      46.     Plaintiff repeats and realleges each and every allegation contained

11    above as if fully set forth herein.

12      47.     During all relevant times, Defendants carried out a plan, scheme and

13    course of conduct which was intended to and, throughout all relevant times, did: (i)

14    deceive the investing public, including Plaintiff, as alleged herein; and (ii) cause

15    Plaintiff to purchase China Agritech's securities at artificially inflated prices. In

16    furtherance of this unlawful scheme, plan and course of conduct, defendants, and

17    each of them, took the actions set forth herein.

18      48.     Defendants (i) employed devices, schemes, and artifices to defraud;

19    (ii) made untrue statements of material fact and/or omitted to state material facts

20    necessary to make the statements not misleading; and (iii) engaged in acts,

21    practices, and a course of business which operated as a fraud and deceit upon the

22    purchasers of the Company's securities in an effort to maintain artificially high

23    market prices for China Agritech's securities in violation of Section 10(b) of the

24    Exchange Act and Rule 10b-5.  All Defendants are sued either as primary

25    participants in the wrongful and illegal conduct charged herein or as controlling

26    persons as alleged below.

27      49.     Defendants, individually and in concert, directly and indirectly, by the

28    use, means or instrumentalities of interstate commerce and/or of the mails, engaged

and participated in a continuous course of conduct to conceal adverse material information about China Agritech's financial well-being and prospects, as specified herein.

50.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of China Agritech's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about China Agritech and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during all relevant time period.

51.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during all relevant times and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination

of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52.     The Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing China Agritech's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout all relevant times, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of China Agritech securities was artificially inflated during all relevant times. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during all relevant times, Plaintiff and the other members of the Class acquired China Agritech securities during the all relevant times at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and/or omissions, Plaintiff was ignorant of their falsity, and believed them to be true. Had Plaintiff and the

1   marketplace known the truth regarding the Company's improper accounting
2   practices, which were not disclosed by Defendants, Plaintiff would not have
3   purchased or otherwise acquired their China Agritech securities, or, if they had
4   acquired such securities during all relevant times, they would not have done so at
5   the artificially inflated prices which they paid.

6       55.   By virtue of the foregoing, Defendants have violated Section 10(b) of
7   the Exchange Act and Rule 10b-5 promulgated thereunder.

8       56.   As a direct and proximate result of Defendants' wrongful conduct,
9   Plaintiff suffered damages in connection with their respective purchases and sales
10   of the Company's securities.

11   **SECOND CLAIM**
12   **Violation of Section 20(a) of The Exchange Act Against the Individual**
13   **Defendants**

14       57.   Plaintiff repeats and realleges each and every allegation contained
15   above as if fully set forth herein.

16       58.   The Individual Defendants acted as controlling persons of China
17   Agritech within the meaning of Section 20(a) of the Exchange Act as alleged
18   herein.  By virtue of their high-level positions, and their ownership and contractual
19   rights, participation in and/or awareness of the Company's operations and/or
20   intimate knowledge of the false financial statements filed by the Company with the
21   SEC and disseminated to the investing public, the Individual Defendants had the
22   power to influence and control and did influence and control, directly or indirectly,
23   the decision-making of the Company, including the content and dissemination of
24   the various statements which Plaintiff contends are false and misleading. The
25   Individual Defendants were provided with or had unlimited access to copies of the
26   Company's reports, press releases, public filings and other statements alleged by
27   Plaintiff to be misleading prior to and/or shortly after these statements were issued
28

1   and had the ability to prevent the issuance of the statements or cause the statements
2   to be corrected.

3       59.    In particular, each of these Defendants had direct and supervisory
4   involvement in the day-to-day operations of the Company and, therefore, is
5   presumed to have had the power to control or influence the particular transactions
6   giving rise to the securities violations as alleged herein, and exercised the same.

7       60.    As set forth above, China Agritech and the Individual Defendants
8   each violated either Section 10(b) and Rule 10b-5, by their acts and/or omissions
9   as alleged in this Complaint.  By virtue of their positions as controlling persons,
10   the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.
11   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff
12   suffered damages in connection with their purchases of the Company's securities
13   during the relevant times.

### THIRD CLAIM

### Fraud Against All Defendants

16       61.    Plaintiff incorporates by reference and realleges each and every
17   allegation contained above as if fully set forth herein.

18       62.    The above representations which were made by defendants Chang,
19   Tang and Bennett and approved by defendant Agritech to the general investing
20   public including plaintiff were material and utterly false in that on behalf of
21   Agritech, defendants made the above statements with the intention of deceiving
22   plaintiff and inducing him to purchase Agritech securities at an artificially inflated
23   prices.

24       63.    Said written representations as aforesaid were false and were known
25   to be false when made to plaintiff and the various public and defendants made the
26   representation recklessly and without regard for its truth.

27

28

64.     Plaintiff acted in justifiable reliance upon the truth of the representations and did not discover the falsity or said misrepresentations and could not reasonably be expected to discover the falsity thereof until recently.

65.     Plaintiff alleges that defendants were guilty of oppression, fraud and malice as defined by California *Civil Code* section 3294 when making the above referenced representations and that plaintiff should recover punitive damages in an amount sufficient to punish and deter defendants from repeating such conduct in the future.

## FOURTH CLAIM

### Negligence Against All Defendants

66.     Plaintiff incorporates by reference and realleges paragraphs 1 through 34 as if set forth in full herein.

67.     Defendants breached their duty to exercise reasonable care and skill in the performance of their duties of due diligence by failing to discover the truth of the matters as herein above alleged.

68.     As a direct and proximate result of said defendants' negligence, plaintiff has been damaged thereby in a sum no less than one hundred thousand dollars.

## FIFTH CLAIM

### Negligent Misrepresentation Against All Defendants

69.     Plaintiff incorporates by reference and realleges paragraphs 1 through 34 as if set forth in full herein.

70.     The material representations made by defendants to plaintiff as the investing public were in fact not true and that defendants knew or had no reasonable ground for believing that the representations were true.

71.     Defendants made the representations with the intent that plaintiff rely on this representation and plaintiff reasonably relied on defendant's representations by purchasing securities at artificially inflated prices.

1    72.   As a direct and proximate result of defendants' misrepresentations, as

2  herein above alleged, plaintiff has been damaged in a sum not less than one

3  hundred thousand dollars.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

(a)   Awarding compensatory damages in favor of Plaintiff against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(b)   Awarding punitive damages according to proof at trial;

(b)   Awarding Plaintiff his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(c)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: May 21, 2011

By: _____
THOMAS GEARING,
individually and as attorneys of
record for MICHAEL
GEARING as Trustee of the
Thomas J. Gearing Private
Annuity Trust, and ROSEMARY
GEARING as Trustee of the
T.J.G. Private Annuity Trust

32

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

### CV11- 4417 ODW (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X]  **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ]  **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ]  **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Thomas J. Gearing, Esq. (SBN 121473)
9000 South Las Vegas Blvd., Ste. 2060
Las Vegas, NV 89123
Tel: (702) 837-0766

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GEARING as Trustee of the Thomas J. Gearing Private Annuity Trust, ROSEMARY GEARING, et al. See attached.<br><br>PLAINTIFF(S)<br>v. | CASE NUMBER<br><br>**CV11 04417 ODW** (MANx) |
| CHINA AGRITECH, INC., YU CHANG, YAU-SING TANG, GENE MICHAEL BENNETT, and DOES 1-10<br><br>DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): <u>CHINA AGRITECH, INC., YU CHANG, YAU-SING TANG, GENE MICHAEL BENNETT, and DOES 1-10</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Thomas J. Gearing, Esq.</u>, whose address is <u>9000 South Las Vegas Blvd., Ste. 2060, Las Vegas, NV 89123</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ MAY 2 3 2011

By: _____ **CHRISTOPHER POWERS**

Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01A (12/07)                                                     **SUMMONS**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MICHAEL GEARING as Trustee of the Thomas J. Gearing Private Annuity Trust, and ROSEMARY GEARING as Trustee of the T.J.G. Private Annuity Trust, and THOMAS J. GEARING, individually

**DEFENDANTS**
CHINA AGRITECH, INC., YU CHANG, YAU-SING TANG, GENE MICHAEL BENNETT, and DOES 1-10

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Thomas J. Gearing, Esq. (SBN 121473)
9000 South Las Vegas Blvd., Ste. 2060
Las Vegas, NV 89123, Tel: (702) 837-0766

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☒ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____ CV11 04417

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): 2:11-cv-01331-RGK-PJW; 2:11-cv-01414-RGK-PJW; CV1102800SVW(JCx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
  ☑ B. Call for determination of the same or substantially related questions of law and fact; or
  ☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, *and* one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Las Vegas, Nevada |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | Chaoyang District, Beijing, China |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date 05/10/2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)